

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,        )
                                  )
        Plaintiff-Respondent,    )
                                  )
v.                             )     No. SD37692
                                  )     Filed: **November 9, 2023**
WILLIAM C. WILLIS,      )
                                  )
        Defendant-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY

Honorable John D. Beger, Circuit Judge

### <u>AFFIRMED</u>

William C. Willis ("Willis") appeals the judgment of the trial court convicting him, after a jury trial, of felony sexual misconduct involving a child under Section 566.083.[1]  In four points on appeal, Willis argues the trial court abused its discretion in excluding evidence that "tended to show the alternative suspect [step-grandfather ("Grandfather")] had a motive to sexually abuse victim ("Victim") and derived sexual gratification from sexually abusing her, and that she was reluctant to accuse [Grandfather] of sexually abusing her."  We affirm the trial court's judgment.

---

[1] All statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

**Factual Background and Procedural History**

The State charged Willis with sexual misconduct involving a child under Section 566.083. In May 2018, Victim lived with Grandmother and Grandfather. Willis was staying with Grandmother and Grandfather on the night of the alleged crime. Victim awoke to Willis holding his penis in his hand and shaking his hand near her face. Willis told Victim he would let the dogs out and kissed Victim's forehead once. Victim identified Willis by his face and voice. Victim testified she was 100% sure it was Willis. Victim testified Willis was wearing dark or camouflage boxer shorts, and the police recovered camouflage boxer shorts from Willis. Victim also testified it could not have been Grandfather, her brother, or any of the other males in the home at the time, and that she was sure it was Willis.

Before trial, Willis made an offer of proof related to his planned defense that Grandfather, not Willis, committed the charged crime. The offer of proof included testimony from School Resource Officer WR ("SRO WR"), Detective GA, Victim, and Grandmother.

In the offer of proof, SRO WR testified he learned Grandfather was a registered sex offender from a periodic review of the sex offender registry and informed school administration that Grandfather was a sex offender and should not be allowed on school grounds. When SRO WR learned Grandfather was a registered sex offender, SRO WR did a further electronic search and learned Victim had been the victim of a sex offense the prior summer. SRO WR also learned other staff at the school had been concerned that Victim's writings were sexual in nature. SRO WR, the school principal, and Victim met in late April 2019 and SRO WR asked Victim if anything else had happened since the prior sex offense. Victim seemed reluctant to talk and asked if she could talk with her parents first. SRO WR, a male, sensed Victim would be more comfortable talking with the female principal and SRO WR left the room. Victim disclosed

allegations of a criminal nature against Grandfather to the school principal, and SRO WR reported those allegations to Detective GA.

In the offer of proof, Detective GA testified he was a Detective Sergeant with the Phelps County Sheriff's Office in both May 2018 and April 2019 and investigated Victim's allegations against Willis and Grandfather. As to the May 2018 allegations, he recalled Victim alleged Willis exposed himself to her. He recalled Grandfather could not sleep that night, had gone to smoke a cigarette in the garage, and returned inside at or around the time Willis exposed himself to Victim. Detective GA did not treat Grandfather as a suspect. As to the April 2019 allegations, SRO WR notified Detective GA that Victim had disclosed Grandfather had touched her genitals. As part of Detective GA's investigation of the April 2019 allegations, Grandmother gave Detective GA photos date-stamped April 12, 2019 of Grandfather and Victim painting Victim's room. Detective GA testified April 12, 2019 is approximately 11 months after the May 2018 charged crime. Detective GA knew Grandfather went "on the run" and had cleaned out the family bank accounts but did not know if Grandfather had been apprehended because Detective GA was not employed with the Phelps County Sheriff's Department at the time of trial. Detective GA testified Grandfather was on the sex offender registry for a sex offense a number of years ago not involving a child.

In the offer of proof, Victim testified Grandfather molested her multiple times "several or many months" after Willis committed the charged crime. Grandfather began molesting her when she and Grandfather painted her room. Victim was reluctant to disclose her allegations against Grandfather because she did not want Grandfather to get in trouble. Grandfather touched various parts of her body but never shook his genitals at her.

3

In the offer of proof, Grandmother testified Grandfather slept with her in bed on the night of the May 2018 charged crime, but that he could have slept outside or somewhere else because she was asleep. As to the May 2018 allegations, Grandmother expressed her concern to Grandfather in a phone call because Detective GA had asked questions about whether it could have been Grandfather who had exposed himself. Grandfather asked Grandmother to be sure Victim was clear that he had not exposed himself given his status as a registered sex offender. Victim was in the next room when this phone call occurred. On the way to the forensic interview, Grandmother told Victim to tell the truth and to tell the interviewers what she had told the police. Grandmother testified she may have told Victim to make sure the interviewers knew it was not Grandfather who exposed himself. In April 2019, SRO WR informed her of Victim's allegations against Grandfather. Grandmother called Grandfather, asked if he had touched Victim, and hung up on him. Grandfather never returned home and she had not spoken to him or seen him since the call. Grandfather had been the primary earner for the family and drained the family's bank account.

The trial court denied Willis's request to introduce the testimony of SRO WR, Detective GA, Victim, and Grandmother set out in the offer of proof, stating: "The court finds the allegations of [Victim] against a different perpetrator about 11 months later is not logically relevant." Willis filed a motion to reconsider, which the trial court denied. The trial court allowed Willis to ask witnesses about whether Grandfather was in the house at the time of the charged crime and whether they knew Grandfather had a past conviction for a sex offense.

The jury found Willis guilty. Willis filed a motion for new trial alleging the trial court abused its discretion in excluding evidence of Victim's allegations against Grandfather. The trial court denied the motion, finding no evidence directly connected Grandfather to the May 2018

4

charged crime.  The trial court entered its judgment and found Willis to be a predatory sexual offender under Section 566.125 and sentenced Willis to four years' imprisonment, to be served consecutively to any sentence then being served.  Willis appealed.

**Standard of Review**

"[Trial] courts have 'broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion.'" *State v. Hollowell*, 643 S.W.3d 329, 336 (Mo. banc 2022) (quoting *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020)).  A trial court abuses its discretion "only when a ruling is clearly against the logic and circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020) (quoting *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997)).  "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* (quoting *Brown*, 939 S.W.2d at 883-84).  This Court "reviews the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *Id.* at 533-34 (quoting *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005)).  "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 534.

**Analysis**

Willis argues the trial court abused its discretion in excluding the testimony of SRO WR, Detective GA, Victim, and Grandmother because the testimony was relevant to show Grandfather had a motive to sexually abuse Victim, derived sexual gratification from sexually abusing Victim, and that Victim was reluctant to accuse Grandfather of sexual abuse.

5

Because Willis's four points on appeal advance the same argument as to each separate witness involved in his offer of proof, our analysis is the same as to each point and we consider the points together.

"Missouri follows the 'direct connection rule':  evidence that another person had an opportunity or motive to commit the charged crime is only admissible if there is also proof that the other person committed some act directly connecting him with the crime." *State v. Johnson*, 603 S.W.3d 371, 377 (Mo.App. 2020) (citing *State v. McKay*, 459 S.W.3d 450, 458 (Mo.App. 2014); *State v. Nash*, 339 S.W.3d 500, 513 (Mo. banc 2011)).  "The evidence must be of the kind that directly connects the other person with the *corpus delicti* and tends clearly to point to someone other than the accused as the guilty person." *Nash*, 339 S.W.3d at 513 (quoting *State v. Rousan*, 961 S.W.2d 831, 848 (Mo. banc 1998)).  "Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *Id.*[2]

The excluded evidence did not directly connect Grandfather to the charged crime.  No witness testified in the offer of proof that Grandfather committed any wrongful act on the night of the charged crime or even interacted with Victim that night.  The trial court did not abuse its discretion by excluding the evidence of Victim's later allegations against Grandfather because those allegations at most showed only Grandfather's motive and opportunity to commit the May

---

[2] Willis argues the State cannot rely on the "direct connection rule" because neither the State nor the trial court relied on the "direct connection rule" at trial.  The trial court explicitly relied on the "direct connection rule" in overruling Willis's motion for new trial related to the excluded evidence.  Additionally, "this Court will affirm on any ground that supports the circuit court's judgment, regardless of the grounds on which the circuit court relied." *Stanley v. State*, 420 S.W.3d 532, 543 n. 9 (Mo. banc 2014); *State v. Ivy*, 673 S.W.3d 884, 887-88 (Mo.App. 2023) ("We will affirm the court's ruling if it is 'correct on any basis supported by the record and the law.'") (quoting *State v. Black*, 666 S.W.3d 205, 208 (Mo.App. 2023)).

6

2018 charged crime without "tend[ing] clearly to point to someone other than the accused as the guilty person." *Nash*, 339 S.W.3d at 513 (quoting *Rousan*, 961 S.W.2d at 848).

Further, Willis cannot establish the required outcome-determinative prejudice from the trial court's exclusion of the offer of proof testimony. At trial, Victim testified Willis committed the May 2018 charged crime, Grandfather did not commit the charged crime, and Victim saw Willis's face and underwear and recognized his voice. The excluded evidence does not contradict Victim's trial testimony. Willis cannot show there is a reasonable probability the trial outcome would have been different had the excluded evidence been admitted. *See Brandolese*, 601 S.W.3d at 534 (quoting *Zink*, 181 S.W.3d at 73). Points I-IV are denied.

## Conclusion

The trial court's judgment is affirmed.


GINGER K. GOOCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS